## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SERVICE WOMEN'S ACTION NETWORK, AMERICAN CIVIL LIBERTIES UNION, and AMERICAN CIVIL LIBERTIES UNION OF CONNECTICUT, | : : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 3:10cv1953 (MRK) |
| | : | |
| DEPARTMENT OF DEFENSE and DEPARTMENT OF VETERANS AFFAIRS, | : : : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

The Service Women's Action Network, the American Civil Liberties Union, and the American Civil Liberties Union of Connecticut (collectively "Plaintiffs") bring this action against the Department of Defense and the Department of Veterans Affairs (collectively "Defendants"). Plaintiffs' Amended Complaint [doc. # 13] states two claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*: (1) that Defendants failed to promptly release responsive records in violation of FOIA, 5 U.S.C. § 552(a)(3)(A); and (2) that Defendants failed to make a reasonable effort to search for responsive records in violation of FOIA, 5 U.S.C. § 552(a)(3)(C). Plaintiffs request that this Court order Defendants to disclose and release requested records in their entirety, to make copies available to the Plaintiffs, and award Plaintiffs costs and reasonable attorney's fees.

Pending before the Court is Defendants' Motion for Summary Judgment [35]. The Court finds that Defendants appropriately did not respond to the first two requests made of all

1

Department of Defense ("DoD") agencies, that there is a question of fact as to whether Plaintiffs'

eleventh request of DoD agencies was unduly burdensome, and that various contested

declarations submitted in support of Defendants' motion are sufficient or insufficient. Based on

these conclusions, which are described in greater detail below, Defendants' Motion for Summary

Judgment is GRANTED IN PART and DENIED IN PART.

## I.

These facts are culled from the Amended Complaint [doc. # 13] and parties' Local Rule

56(a) Statements [docs. # 35-2, 48-1], exhibits, and affidavits. All of the facts recited below are

undisputed unless otherwise noted, and the Court presents all facts "in the light most favorable to

the nonmoving party"—here, Plaintiffs—after drawing "all reasonable inferences in [their]

favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks

omitted). Additional facts are discussed in the analysis where relevant.

## A.

Service Women's Action Network ("SWAN") is a nonpartisan, nonprofit organization

that supports, defends, and empowers current service women and female veterans through

advocacy initiatives and community programs. American Civil Liberties Union ("ACLU") is a

national, nonpartisan public interest organization of more than 500,000 members, dedicated to

protecting the constitutional and civil rights of individuals. In recent years, the ACLU Women's

Rights Project has taken a primary role at the local, state, and national levels to ensure

governmental accountability for violence against women and girls through litigation, policy

advocacy, and public education. ACLU of Connecticut ("ACLU CT") is a non-profit, non-

partisan membership organization dedicated to protecting individual civil rights and the principles of individual liberty embodied in the United States and Connecticut Constitutions.

Plaintiffs believe that the extent of sexual assault and harassment within the military is extensive and damaging on multiple levels. Plaintiffs allege that the government is not responding adequately to protect women from such incidents: the government has not meaningfully condemned such violence against women in the military; the government has not reformed its internal procedures to allow victims to report such incidents anonymously (and thereby avoid professional and social retaliation); the government is not adequately prosecuting alleged aggressors or appropriately punishing convicted ones; and the government is not adequately budgeting or paying for the treatment of women who have experienced sexual trauma for the physical or mental disabilities that often accompany or follow such experiences. Plaintiffs allege that the government is intentionally shielding information regarding the true extent of sexual violence in the military because disclosure would result in negative publicity and increased expenses.

The U.S. Department of Defense ("DoD") is the federal agency responsible for coordinating and supervising government activity relating directly to national security and the U.S. armed forces. The U.S. Department of Veterans Affairs ("VA") is the federal agency responsible for helping veterans by providing certain benefits and services.

## B.

By letter dated October 15, 2010, Plaintiffs submitted FOIA requests to six different offices within DoD: the Department of the Navy, the Office of the Inspector General, the Department of the Air Force, the Department of the Army, the Commandant of the Marine Corps, and the Office of Freedom of Information. DoD received the letters on October 15, 2010.

3

As much of this dispute turns on exactly what these requests were for, the Court includes them here in their entirety:

Requesters seek the release of records[1] containing the following:

1. Information pertaining to where and how the DoD stores military-related reports and investigations about military sexual trauma ("MST") complaints, equal opportunity ("EO") complaints, sexual harassment ("SH") complaints, and/or domestic violence ("DV") complaints.
2. Information concerning how service members can request or obtain from DoD military-related reports and investigations about MST, EO, SH, and/or DV complaints.
3. The number of requests by service members for the release of records relating to MST, EO, SH, and DV complaints, in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
4. The number of reports relating to MST, EO, SH, and/or DV complaints released to service members or the public in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
5. The number of military-related incidents of SH, EO, DV, and/or MST reported by service members in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
6. The number of sexual-assault-related courts-martial in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
7. The number of charges sworn in all sexual-assault-related courts-martial in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
8. The number of sexual-assault-related courts-martial that resulted in acquittal in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
9. The number of sexual assault related courts-martial that resulted in convictions in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
10. The crimes for which convictions in sexual assault-related courts-martial were secured, and/or the sentences awarded for those convictions in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
11. All records related to the non-judicial or administrative resolution of sexual assault-related complaints that did not result in court martial in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
12. A breakdown by gender and/or race of any information that falls within the scope of requests 1 though 11.

Am. Compl. [doc. # 13-2] Ex. A.

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondences, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

As of December 13, 2010, Plaintiffs had received denials of fee waivers from the Office of Freedom of Information and the Office of the Inspector General, letters from the Office of Freedom of Information and the Office of the Inspector General claiming they could find no requested records, and a letter from the Army Crime Records Center refusing to search for the requested records.

By letters dated December 16, 2010, Plaintiffs administratively appealed the decisions of the Office of Freedom of Information, the Office of the Inspector General, and the Army Crime Records Center.

## C.

By letter dated October 15, 2010, Plaintiffs submitted FOIA requests to five different offices within VA: the Veterans Benefits Administration ("VBA"), the Board of Veterans Appeals ("BVA"), the Office of the General Counsel, the Office of Inspector General, and the Veterans Health Administration. VA received the letters on October 15, 2010.

Again, as much of this dispute turns on exactly what these requests were for, the Court includes them here in their entirety:

Requesters seek the release of records[2] containing the following:

1. The number of benefit claims filed, approved, and rejected for Post-Traumatic Stress Disorder ("PTSD") in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
2. The distribution of disability ratings for PTSD claims in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
3. The distribution of disability ratings for PTSD claims awarded in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

---

[2] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondences, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

4. The number of benefit claims filed for PTSD that list military sexual trauma ("MST") as a causal factor in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

5. The number of benefit claims approved and rejected for MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

6. The number of benefit claims rejected for MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010 based on lack of direct service connection.

7. The number of benefit claims approved for MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010 where the evidence of direct service connection consisted solely of the veteran's service record and/or those where the evidence of direct service connection consisted of the veteran's service record and corroborating evidence from outside the service record.

8. The number of benefit claims rejected for MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010 where the evidence of direct service connection consisted solely of the veteran's service record and/or those where the evidence of direct service connection consisted of the veteran's service record and corroborating evidence from outside the service record.

9. For FY2006, FY2007, FY2008, FY2009, and/or FY2010, the number of benefit claims based on MST-related PTSD for which the VA advised the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor, and the number of benefit claims based on MST-related PTSD for which the VA allowed the claimant the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence.

10. The distribution of disability ratings for benefit claims awarded for MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

11. The number of benefit claims filed for non-PTSD conditions that list MST as a causal factor in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

12. The number of benefit claims approved and rejected for non-PTSD, MST-related conditions in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

13. The number of benefit claims rejected for non-PTSD, MST-related conditions in FY2006, FY2007, FY2008, FY2009, and/or FY2010 based on lack of direct service connection.

14. The number of benefit claims approved for non-PTSD, MST-related conditions in FY2006, FY2007, FY2008, FY2009, and/or FY2010 where the evidence of direct service connection consisted solely of the veteran's service record, and/or where the evidence of direct service connection consisted of the veteran's service record and corroborating evidence from outside the service record.

15. The number of benefit claims rejected for non-PTSD, MST-related conditions in FY2006, FY2007, FY2008, FY2009, and/or FY2010 where the evidence of direct service connection consisted solely of the veteran's

service record, and/or where the evidence of direct service connection consisted of the veteran's service record and corroborating evidence from outside the service record.

16. The distribution of disability ratings for benefit claims awarded for non-PTSD, MST-related conditions in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

17. The number of benefit claims approved and rejected for each type of non-MST-related PTSD in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

18. A breakdown by gender and/or race of any information that falls within the scope of requests 1 through 17.

Am. Compl. [doc. # 13-3] Ex. B.

As of December 13, 2010, Plaintiffs had received a response from the BVA providing partial records in response to some requests and claims that it could not respond to others. Plaintiffs also received responses from the Office of Inspector General and the Office of the General Counsel claiming that they did not possess any requested records.

By letters dated December 16, 2010, Plaintiffs administratively appealed the decisions of the BVA, the Office of Inspector General, and the Office of the General Counsel.[3]

## II.

As with all motions for summary judgment, summary judgment in a FOIA case is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a).

---

[3] Plaintiffs do not appear to now contest the sufficiency of the FOIA responses from the VA's Office of the General Counsel, the VA's Office of Inspector General, or the Veteran's Health Administration.

On a motion for summary judgment in a FOIA action, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79 (1973)). To satisfy that burden, the agency may rely on "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and [explaining in reasonable detail] why any withheld documents fall within an exemption." *Id.*

To establish the adequacy of a search, an agency affidavit or declaration must be "relatively detailed and non-conclusory" and "submitted in good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted); *see also Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005). This means, for instance, that an agency affidavit or declaration must describe in reasonable detail the scope of the search and the search terms or methods employed. *See, e.g.*, *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993); *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 518 (S.D.N.Y. 2007). Because "[a]ffidavits submitted by an agency are accorded a presumption of good faith[,] . . . discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney*, 19 F.3d at 812 (quotation marks and citation omitted).

### III.

Defendants maintain that there was no need to respond to the first two requests sent to all DoD offices, as they were questions about government policies, rather than requests for files or similar information. As an agency need not respond to or "answer questions disguised as a FOIA request," *Scraff-Martinez v. DEA*, 770 F. Supp. 2d 17, 23 (D.D.C. 2011) (quotation marks

omitted), Defendants properly did not respond to the first two DoD Items. Summary judgment is therefore granted with regard to the first two requests sent to all DoD offices.

**IV.**

Before the Court can determine whether the Defendants' searches were reasonable, as required by 5 U.S.C. § 552(a)(3)(C), it must first determine what materials the Defendants were obligated to search for—which is relevant to evaluating Plaintiffs' first claim under 5 U.S.C. § 552(a)(3)(A). Plaintiffs argue that their requests sought individual information; Defendants maintain that all requests were for aggregate or statistical data.

The Court finds that many of the DoD FOIA requests appear to anticipate statistical or aggregate responses: Items 3-9 all ask for "[t]he number of" a certain type of document. *See* Am. Compl. [doc. # 13] Ex. A. Item 12 requests a gender and/or race breakdown of the requested information, which seems to be a request for statistical data. *See id.* Similarly, with the exception of a final claim that also requests a race and/or gender-based breakdown of the provided information, all of the VA FOIA requests ask either for "[t]he number of" a certain type of document or "[t]he distribution of disability ratings" for different types of claims. *See id.* Ex. B. Excepting DoD Items 10 and 11, then, all of the Plaintiffs' requests appear to be for statistical or aggregate responses.

The only requests susceptible to reading as requests for individualized data are Items 10 and 11 of the DoD FOIA requests:

10. The crimes for which convictions in sexual assault-related courts-martial were secured, and/or the sentences awarded for those convictions in FY2006, FY2007, FY2008, FY2009, and/or FY2010.
11. All records related to the non-judicial or administrative resolution of sexual assault-related complaints that did not result in court martial in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

9

*Id.* Ex. A. Plaintiffs maintain that, construed liberally, Items 10 and 11 clearly ask for individual records.[4] Defendants argue that both request statistical or aggregate data, as (1) both should be read in the larger context of the other requests, (2) the fact that Item 12 requests a breakdown by gender and/or race implies that 10 or 11 must be susceptible to such a breakdown, and (3) Plaintiffs' subsequent filing of a separate FOIA request implicitly acknowledges this one's failure to request individual records.

The most sensible reading of Item 10 is as a request for aggregate data: specifically, for a list of crimes for which court martial convictions were secured and/or for a list of the sentences awarded for those convictions. While "[t]he crimes for which convictions in courts-martial were secured are certain to be in the records of the courts-martial," Pls.' Resp. [doc. # 47] at 9, along in other places, this is essentially saying that information in lists may be found in documents from which that list was made, which would be true for any list. The FOIA request generally asks for release of records "containing" the following information—not for all records possibly relating to such information. *See* Am. Compl. [doc. # 13] Ex. A.

Item 11, however, requests "records containing . . . [a]ll records" relating to the non-judicial or administrative resolution of complaints that did not result in court martial. Despite this odd phrasing, the Court is not sure how the DoD agencies could read this as a request for aggregate data. Instead, in contrast to the other requests, it specifically asks for all records, a word which is defined within the FOIA request as encompassing a substantial number of types of

---

[4] Plaintiffs also argue that in February 2011 and subsequent discussions between the parties, Plaintiffs clarified that they were requesting individual records. However, what is relevant is the text as presented to the agency, not as construed by a plaintiff after litigation commences. *See, e.g.*, *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) ("[A]n agency need only conduct a search as to the original request, and not to subsequent additions or clarifications."). Accordingly, the Court analyzes the text as received by the agency.

documents. This is not a case of Plaintiffs later attempting to change the terms of a request: by its terms, the request appears to ask for reams of documents.

The fact that every other request—in both the DoD and VA FOIA letters—appears to ask for aggregate data does not mean that Item 11 may not ask for individual data. It may explain why Defendants misread the request, but it is disingenuous for Defendants to now attempt to argue that this single Item never asked for "all records." The Defendants' argument that Item 12, which asks for a gender and/or race breakdown of the previous requests, must imply that the previous requests were for aggregate data is also unconvincing. Item 12 is simply a separate request for any information the DoD might have on such breakdowns. Nor does Plaintiffs' subsequent filing of a new FOIA request imply that its original filing did not include a similar request; rather, it was an appropriate response to the fact that Defendants refused to fulfill this one.

"When [a] request demands all agency records on a given subject then the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore. But, an agency need not conduct a search that is unduly burdensome." *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) (citations omitted). As written, Item 11's request is clear enough—but it may also be unduly burdensome. Plaintiffs ask for "all records" relating to the non-judicial or administrative resolution of a sexual assault-related complaint that did not result in a court martial for five different years—where a "record" includes, but is not limited to, "correspondences, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies." Am. Compl. [doc. # 13] Ex. A. Given this expansive request, the Court is tempted to find as a matter of law that the

request is unduly burdensome. However, as the Court must examine the facts and draw inferences in favor of the non-moving Plaintiffs, and as Defendants have not submitted evidence on this point, *see* Defs.' Reply [doc. # 50] (stating only that the relevant data cannot be reasonably searched and therefore a response would be unduly burdensome), the Court concludes that there is a genuine issue of material fact as to whether the Item 11 request is unduly burdensome. Accordingly, summary judgment with regard to this request is denied.

## V.

The Court now turns to evaluating the adequacy of the Defendants' searches. In order to do so, it examines the numerous declarations submitted with Defendants' Motion for Summary Judgment [doc. # 35].

Plaintiffs contest the sufficiency of many of these affidavits. Specifically, Plaintiffs contend that many of the declarations are not made by a person who undertook or supervised the search, that the declarations contain an inadequate description of the agency's file systems and/or search, that the declarations fail to prove that the agency conducted an adequate search, and/or that there is countervailing evidence that certain agencies acted in bad faith.

The Court first reviews the relevant case law for each of these issues. It then examines the various agencies' affidavits to determine whether they are sufficient.

## A.

Plaintiffs critique many of the agencies for failing to provide a declaration from someone who undertook or directly supervised the records search. Instead, the declarations associated with these offices all come from individuals at the top of the supervisory ladder. The declarants all aver that their declarations are based on their personal knowledge, upon their review of

12

information available to them in their official capacities, and upon their own conclusions. While acknowledging that a supervisor may rely on second-hand information in drafting declarations, Plaintiffs question whether *any* supervisor may submit a sufficient declaration or whether a declarant must either have personally conducted the search or supervised not only the person who conducted the search but the search itself.

Case law does not provide a definitive answer. Most cases simply state that the supervisor of a search may testify to the search without distinguishing between general supervisors (such as the head of an agency) and supervisors who personally oversee a search. *See, e.g.*, *Truesdale v. U.S. Dep't of Justice*, 803 F. Supp. 2d 44, 50 (D.D.C. 2011) (relying on an affidavit from a "supervisor" without clarifying the supervisor's role, except to say that she supervises the handing of FOIA requests); *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (finding that the Acting Chief of the Litigation Unit, which processes litigation requests, was the appropriate individual to describe the search for responsive documents, without clarifying whether he was a general or specific supervisor); *SafeCard Servs., Inc.*, 926 F.2d at 1201 (finding that a paralegal who "was in charge of coordinating the SEC's search and recovery efforts" was "the most appropriate person to provide a comprehensive affidavit").

Second Circuit case law provides only weak support for Plaintiffs' argument that only a supervisor who personally supervised the search may submit an affidavit. In *Carney*, the Second Circuit found that "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." 19 F.3d at 814 (discussing affidavits written by officials who had either personally supervised, were personally involved in

13

processing, or who supervised the processing of the FOIA requests). At least one lower court has since read *Carney* as requiring that an affidavit from the agency employee who was responsible for supervising the search—not any just a supervisor—should be obtained. *See Katzman v. CIA*, 903 F. Supp. 434, 438 (E.D.N.Y. 1995).

The district courts of D.C. seem to have taken a different route, finding that effectively any supervisor is capable of submitting a sufficient declaration. In *Blunt-Bey v. U.S. Dep't of Justice*, 612 F. Supp. 2d 72, 74 (D.D.C. 2009), a district court found that officials who learn about a search "through the performance of their official duties and their review of the official files" have sufficient "personal knowledge" to testify about the search under Rule 56. *Accord Holt v. U.S. Dep't of Justice*, 734 F. Supp. 2d 28, 38 (D.D.C. 2010) ("[E]ach declarant has stated his or her familiarity with the component's procedures for handling FOIA and Privacy Act requests, and each declaration is based on the declarant's review of the component's official files. The Court may accept the declaration of a person who did not conduct the search itself if in his declaration, he attests to his personal knowledge of the procedures used in handling a FOIA request and his familiarity with the documents in question." (citations, quotation marks, and alterations omitted)).

At least one Second Circuit district court has explicitly applied similar reasoning, *see Adamowicz v. IRS*, 672 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (rejecting the claim that a government agency must submit declarations from officers who actually supervised and conducted the search in question and instead finding that a supervisor who delegates the search to another, who in turn delegates to another, is the appropriate person to submit a declaration) *affirmed* 402 F. App'x 648 (2d Cir. 2010), and at least one has implicitly applied similar reasoning, *see El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 299 (D. Conn. 2008)

(not questioning the sufficiency of a declaration filed by the Chief of the agency's FOIA Appeals, Policy, and Litigation Branch who had learned of information relating to the request in her official capacity).

The Court believes that the discrepancies within the case law reflect the fact-intensive nature of this inquiry. Depending on the nature of the search and the role and experience of the supervisor, some supervisors who did not personally supervise a particular search may nonetheless learn enough about it to be able to submit a sufficient declaration based on personal knowledge; others may not. Accordingly, while the Court finds the D.C. district court approach persuasive, in the absence of clear Second Circuit guidance it ultimately resolves the parties' arguments on this point on the basis of the individual declarations rather than as a matter of law.

### B.

Agency FOIA declarations should provide reasonably detailed information about the "scope of the search and the search terms or methods employed." *Godaire v. U.S. Dep't of Justice*, No. 3:10cv01266 (MRK), 2011 WL 3047656, at *2 (D. Conn. Jul. 25, 2011). Affidavits must also aver "that all files likely to contain responsive materials (if such records exist) were searched." *El Badrawi*, 583 F. Supp. 2d at 298 (quotation marks omitted); *see also McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006) ("At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exists) were searched" (quotation marks omitted)).

To provide a complete description of the search, affidavits "must detail files searched and the general scheme of the agency file system." *Fisher v. FBI*, 94 F. Supp. 2d 213, 218 n.2 (D.

Conn. 2000); *see also Katzman*, 903 F. Supp. at 438 (noting that agency declarations must "identify the searched files and describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information" (quotation marks omitted)). "Without at least an elementary description of the general scheme of an agency's file system, a FOIA requester has no basis upon which to dispute an agency's assertion that any further search is unlikely to disclose additional relevant information." *El Badrawi*, 583 F. Supp. 2d at 300 (quotation marks and alteration omitted) (finding that a description of the database searched was not sufficient, as the affidavit did not also describe the general scheme of the file system).

While an agency must describe the search and the files searched, there is no requirement that agencies describe *all* of their file systems. Instead, an adequate description need only provide reasonable detail about the parameters and execution of an agency's search and aver that all files likely to contain responsive material were searched. *See id.*; *McCready*, 465 F.3d at 14.

As an initial matter, many of the Plaintiffs' complaints regarding search descriptions are based on the claim that certain declarations fail to describe *all* of their file systems. Defendants argue that the information they have provided regarding searched databases is sufficient. Defendants reason that, as federal agencies publish in the Federal Register a notice briefly describing every system of records they maintain that tracks information retrievable by the name or other personal identifier of an individual, much of the information Plaintiffs request could be discovered through a few Google searches.

Google searches may allow Plaintiffs to undercover much of the missing information if Plaintiffs' sole intention was to learn about the government's file systems, but that is not the purpose of the declaration requirement. Declarations are supposed to allow the Plaintiffs—and

the Court—to evaluate the reasonableness of an agency's search. Defendants' argument therefore implies that *the Court* must comb the internet to evaluate whether the searches were reasonable. The Court declines to do so and instead looks only to the declarations to determine whether they provide enough of a review of the respective relevant file systems that the Plaintiffs and Court may evaluate the searches' sufficiency.

Therefore, although the Court summarily dismisses Plaintiffs' arguments that are only generalized critiques of an agency's failure to describe *all* commands, departments, record systems, databases, et cetera, the Court will be concerned when a declaration does not reasonably describe why one source of records and not another was searched.

Finally, if an agency declaration fails to adequately describe a search, that lapse alone does not establish an absence of good faith—or the failure to conduct a reasonable search. *See N.Y. Times*, 499 F. Supp. 2d at 518. Instead, "[t]he appropriate next step is for Defendants to submit to the Court a reasonably detailed affidavit or affidavits which indicate the rigors of their search, following review of which the Court will determine whether the search was adequate under FOIA." *Id.* (quotation marks and alterations omitted).

## C.

Plaintiffs critique numerous declarations for failing to demonstrate that the relevant agency conducted an adequate search, relying heavily on the maxim that, "[a]lthough a requester must reasonably describe the records sought, an agency also has a duty to construe a FOIA request liberally." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quotation marks, citation, and alteration omitted).

Courts also recognize, however, that "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."

17

*Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *see also Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at \*9 (S.D.N.Y. Jun 19, 2008) ("Reasonableness does not demand perfection . . . an agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." (quotation marks omitted)). The question is not whether any additional responsive documents conceivably exist, but rather whether the agency's search was reasonably calculated to discover responsive documents. *See id.* Therefore, the fact that an agency might later discover relevant documents does not necessarily mean that the original search was unreasonable. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) ("That some documents were not discovered until a second, more exhaustive, search was conducted does not warrant overturning the district court's [finding that the search was adequate]."). An agency need not produce records it has already publicly disseminated, *see U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 152 (1989) (finding that an agency need not produce requested materials that it has previously published or made available), nor need an agency create a new record in response to a request for one, *see Scraff-Martinez*, 770 F. Supp. 2d at 22-23.

As noted above, the burden of demonstrating that a search is adequate rests on the agency. *See* 5 U.S.C. § 552(a)(4)(B); *Carney*, 19 F.3d at 812. To satisfy that burden, an agency may submit non-conclusory declarations that explain, in reasonable detail, the scope and method of the agency's search, as well as any justifications for acknowledged non-disclosures. *See id.* "A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by

evidence of agency bad faith." *Grand Cent. P'ship*, 166 F.3d at 478 (quotation marks omitted) (emphasis in original).

### D.

Once an agency has shown its search to be adequate, the burden shifts to the plaintiff to demonstrate bad faith. *See Fisher*, 94 F. Supp. 2d at 218. A FOIA plaintiff must "make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812 (citation omitted). "[E]ven if an agency has met its burden by submitting, in good faith, relatively detailed and nonconclusory affidavits, the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *El Badrawi*, 583 F. Supp. 2d at 299 (quotation marks omitted).

An agency declaration cannot be rebutted, however, by "purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc.*, 926 F.2d at 1200 (quotation marks omitted). If a plaintiff fails to satisfy this burden, summary judgment is appropriate. *See Carney*, 19 F.3d at 812.

### VI.

### A.

Plaintiffs take issue with three declarations, submitted on behalf of the Department of the Navy, by Robin Patterson, the Head of the Department of the Navy, Chief of Naval Operations, Privacy and FOIA Policy Officer; Tammy Tideswell, the Initial Denial Authority for

Commander, Navy Installation Command's FOIA Program; and David Harrison, the Director of Code 20, the Criminal Law Division of the Office of the Judge Advocate General.

The Court finds that both Ms. Patterson and Ms. Tidewell's declaration fail to adequately describe the search and meet their burden of demonstrating that the search was sufficient. Additionally, Plaintiffs have introduced countervailing evidence based on admissions in Ms. Patterson's declaration. Summary judgment with regard to the Navy's searches is therefore inappropriate at this time. The Court finds Mr. Harrison's declaration sufficient.

### 1.

Plaintiffs first argue that Ms. Patterson's declaration is insufficient because she relied on information obtained from an individual over whom she exercised no direct authority. David German, a GS-14 level federal employee with over thirteen years experience as the Navy Personnel Command FOIA officer, advised Ms. Patterson and/or the person conducting the search under Ms. Patterson's supervision that, based on his knowledge of the Command's filing systems, it did not maintain any responsive records to Plaintiffs' FOIA request. The Court finds that Ms. Patterson reasonably relied on Mr. German's conclusion, and her declaration is not rendered insufficient as a result.

### 2.

Plaintiffs next argue that the three declarations all fail to describe the searches adequately. Plaintiffs first observe that, while Ms. Patterson does describe the Navy commands she and another agreed would produce responsive documents, the lack of a list of all possible commands makes it difficult to evaluate whether Ms. Patterson's chosen commands are appropriate. Plaintiffs also note that the fact that Ms. Patterson later came to learn that two

additional commands also had responsive records indicates that still more commands may also have had such information.

As noted above, Ms. Patterson is not obligated to provide a complete list of all commands or to review each command one by one and explain why it was not searched. Ms. Patterson also appropriately describes why the commands selected for search were selected and, with one exception,[5] adequately describes their searches. Furthermore, the unearthing of responsive records in other commands is not dispositive, as the issue is not whether any additional responsive documents might conceivably exist, but rather whether the original search was reasonably designed to discover responsive documents. *See, e.g.*, *Amnesty Int'l*, 2008 WL 2519908, at *9; *see also Grand Cent. P'ship, Inc.*, 166 F.3d at 489.

However, the Court cannot determine from Ms. Patterson's declaration whether the original search was calculated to return responsive documents. *See El Badrawi*, 583 F. Supp. 2d at 300 (finding a description of the searched database insufficient, as the larger file system was not described). Rather than describing her reasons for selecting only certain commands for search and not others, Ms. Patterson simply states that she and the search coordinator "determined it was unlikely that any other commands would have responsive records." Patterson Decl. [doc. # 35-16] ¶ 6. Ms. Patterson therefore implicitly avers that all files likely to contain responsive material were searched, but she fails to provide sufficient details about why she selected specific commands for search and not others. *Cf. McCready*, 465 F.3d at 14.

---

[5] Ms. Patterson's description of the Department of the Navy Sexual Assault Prevention and Response Office's search is overly conclusory; although the Department produced responsive documents, Ms. Patterson's only declaration of their search is that it "included all information that they both generated and maintained that was responsive to the request." Patterson Decl. [doc. # 35-16] ¶ 9. The Court agrees with Plaintiffs that this is not a sufficient description of how the Department's search was conducted.

Ms. Patterson's description of the Naval Inspector General file system is similarly inadequate because, although she describes the databases it searched, she fails to describe why those were the only databases searched. *See* Patterson Decl. [doc. # 35-16] ¶ 13. It may well be that there were no other responsive databases, or that there were no other databases at all. Regardless, Ms. Patterson must explain why the searched databases were selected for search and why others were not.

Ms. Tideswell's declaration likewise fails to describe the search at the Commander, Navy Installation Command (CNIC), insofar as she fails to explain why only four of the departments were contacted to conduct searches. While Ms. Tideswell does describe the departments contacted for various searches, *see* Tideswell Decl. [doc. # 35-17] ¶¶ 6-9, she does not explain why other departments were not searched.[6] *See El Badrawi*, 583 F. Supp. 2d at 300.

However, Plaintiffs' attempt to make a similar argument with regard to Mr. Harrison's declaration fails.[7] Plaintiffs argue that Mr. Harrison's declaration does not describe Code 20's file

---

[6] Plaintiffs also argue that Ms. Tideswell failed to adequately describe CNIC's search on the basis of her statement that CNIC collects court-martial data but does not maintain it. *See* Tideswell Decl. [doc. # 35-17] ¶ 6. Plaintiffs believe that Ms. Tidewell was obligated to explain this seeming contradiction and that, based on her description, a search for material related to court-martial records was warranted. The Court disagrees, and finds Ms. Tideswell's explanation sufficient. *See id.* ("CNIC does not maintain this data; OJAG Code 20 is the release authority for all courts-martial records and reports . . . ."). The Court also finds that Ms. Tidewell reasonably relied on third-party representations that records were not stored at certain facilities when concluding that a search of certain departments were futile. *See id.* ¶¶ 7-8.

[7] Plaintiffs also argue that Shaka Thorne's declaration fails to note whether the Naval Criminal Investigative Service (NCIS) databases can be searched by gender or race, with the implication that this makes it impossible to tell if a search for Item 12 was adequate. The declaration merely states that the databases "are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals." Thorne Decl. [doc. # 35-18] ¶ 7. Defendants subsequently conducted a supplemental search based on gender and race and produced the results to Plaintiffs. *See* Donart Decl. [doc. # 50-3] ¶¶ 6-7. The Court believes that the supplemental search sufficiently addresses Plaintiffs' concerns.

system adequately because he doesn't give sufficient descriptions of the databases or clarify that his list constitutes is the entirety of Code 20's databases.

Mr. Harrison's declaration lists certain databases that may have contained related information and explains why they were not searched, *see* Harrison Decl. [doc. # 35-19] ¶ 3 (noting that four record systems are not designed to systematically collect sexual-assault-related court-martial data); describes other individual records and explains why they were not searched, *see id.* ¶ 4 ("[W]e do not compile the disparate pieces of information contained within each of these individual records."); describes the database that was ultimately searched for relevant records and explained why this was the only database searched, *see id.* ¶ 5 (noting that CMTIS alone tracks all courts-martial records); and describes reasons for why certain requests were outside of the scope of Code 20's military justice responsibilities, *see id.* ¶ 7. The Court finds this description more than sufficient to satisfy the agency's burden with regard to describing the file systems. *See McCready*, 465 F.3d at 14.

### 3.

Arguing that the Department of the Navy failed to liberally or reasonably construe Plaintiffs' requests, *see Nation Magazine*, 71 F.3d at 890, Plaintiffs contest whether the agency has met its burden of proof in proving it conducted an adequate search.[8]

---

[8] In her declaration, Shaka Thorne**,** on behalf of the Naval Criminal Investigative Service, describes three databases that are usually searched in response to perfected FOIA requests and notes that these records are not searchable by generic type of complaint, crime, or outcome. Instead, the records are searchable by a broad variety of offense codes, including indecent assault, rape, domestic assault, and special inquiry. Plaintiffs contend that Ms. Thorne refused to produce data because the terms used in the FOIA request did not precisely match the terms of the NCIS database. *See* Throne Deposition [doc. # 35-18] ¶ 7 ("NCIS does not maintain a separate system of records that compiles the number of specific complaints outside of the broad categories listed above. Accordingly, NCIS would have to create a new record for the compilation of complaints that meet narrower criteria than what is now used in response to the immediate request."). NCIS has since conducted a supplemental search to compile statistics

First, Plaintiffs maintain that Ms. Patterson's description of the Naval Inspector General's search of the CMIS and NIGHTS databases indicate that the search was too narrow. The Office searched for complaints within the relevant time period in which the subject line and investigation summary included the term "Sexual Harassment," "Equal Opportunity," "Domestic Violence," or "Sexual Trauma." *See* Patterson Decl. [doc. # 35-16] ¶¶ 13-14. Plaintiffs maintain that "Sexual Assault" should have been one of the search terms, along with the terms Shaka Thorne indicated were used in the Navy (namely "Rape," "Indecent Assault," and "Domestic Assault"). Defendants argue that agencies have significant discretion in selecting what search terms to use, *see Media Research Ctr. v. U.S. Dep't of Justice*, Nos. 10-2013 (ESH), 11-0426 (ESH), 2011 WL 4852224, at *5 (D.D.C. Oct. 13, 2011), and that it was reasonable for the Naval Inspector General to limit its search terms to the type of complaints Plaintiffs listed in its request.

While it may have been reasonable to limit the search terms to Plaintiffs' request, Ms. Patterson does not explain why she chose to do so. Given the lack of a reasonable description, the Court finds that Ms. Patterson's declaration does not meet the required burden of proof with regard to her description of the Naval Inspector General's search.

Second, Plaintiffs argue that Code 20 also failed to properly construe their FOIA requests, as Code 20 did not search at least four databases which Mr. Harrison acknowledged "may include documents related to individual sexual assault related courts-martial" because they were not designed to systematically collect sexual-assault-related court martial data. *See* Harrison Decl. [doc. # 35-97] ¶¶ 3, 4. Given that Defendants apparently understood all DoD requests to request aggregate data, the decision not to search databases that collected only individualized data was reasonable at the time. However, as there is a question of fact as to

about the contested terms and has produced the results of that search to Plaintiffs. *See* Donart Decl. [doc. # 50-3] ¶¶ 6-7. The Court believes this supplemental search should satisfy Plaintiffs' concerns.

whether Item 11's request for individualized data is unduly burdensome, Code 20 may need to conduct an additional search of these four databases and provide an additional declaration.

### 4.

Plaintiffs contend that they have countervailing evidence demonstrating bad faith regarding Ms. Patterson's declaration: namely, that the Navy's inability to produce Unit Punishment Books for all requested years does not explain the failure to produce them for some of the requested years. Ms. Patterson states that the Navy need not produce Unit Punishment Books because the Unit Punishment Books, which "usually contains ledger entries of [Non-Judicial Punishments] and other punishments . . . are only retained for a period of two years and are then destroyed." Patterson Decl. [doc. # 35-16] ¶ 19. As there is implicit evidence that Unit Punishment Books do exist, and as no plausible reason is given for the agency's failure to produce them, the Court finds that summary judgment with regard to the Navy is inappropriate at this time.

Plaintiffs also argue that Code 20's decision not to search repositories for courts-martial records of trial on the basis that they were physically located in disparate locations was not a sufficient justification and, as a result, there is a question of fact as to whether Code 20 conducted a search reasonably calculated to produce all relevant records.[9]

The Court disagrees with Plaintiffs' assessment of Code 20's reasons for not producing individual trial records. Mr. Harrison explains that "[e]ven though Code 20 is responsible for retrieving individual Navy and Marine Corps [records of trial], we do not compile the disparate

_____

[9] Plaintiffs observe that Code 20 did not provide any data for FY2006, presumably because CMTIS did not record information from cases prior to October 2006 and some data has been lost or corrupted. *See* Harrison Decl. [doc. # 35-19] ¶ 10. As Plaintiffs note, however, this does not mean that *all* data from FY2006 was lost or corrupted. Code 20 has since provided data for FY2006 to Plaintiffs from the only database that contains such information. *See* Nelson Decl. [doc. # 50-4] ¶¶ 4-6.

pieces of information contained within each of these individual records." Harrison Decl. [doc. # 35-19] ¶ 4. Instead, the physical records are located in dispersed locations. *See id.* Given that Code 20 apparently believed Plaintiffs to be requesting aggregate data, this paragraph appears to be a good faith attempt to explain why additional aggregate data was not produced. As noted above, Code 20 may need to conduct an additional search, depending on this Court's ruling regarding whether producing individual files is unduly burdensome. For the purposes of this motion, however, Plaintiffs have not offered sufficient countervailing evidence to create a question of fact regarding the reasonableness of Code 20's search.

## B.

The Office of the Inspector General's declaration, submitted by John R. Crane, the Assistant Inspector General for the Office of Communications and Congressional Liaison, is sufficient and summary judgment with regard to this agency is warranted. Mr. Crane's responsibilities include the role of Freedom of Information Act/Privacy Act ("FOIA/PA") Appellate Authority for the office. He is also the second line supervisor of the FOIA/PA Initial Denial Authority, who heads the office's FOIA Requester Service Center/Privacy Act Office. He states that, based on his current position and past experience, he is familiar with the office's FOIA procedures. Mr. Crane doesn't seem to have actually supervised the search, but seems to have been an attenuated supervisor of a person who did. Mr. Crane personally handled SWAN's administrative appeal.

A declaration from a person who actually supervised the search—who appears to be the unnamed Chief or the unnamed Senior Specialist—would have been preferable, but that doesn't mean Mr. Crane's declaration is inadequate. As the declaration provides a thorough description of the search and of the reasons why certain actions were taken, the Court finds that Mr. Crane

has sufficient personal knowledge to testify to the search under Rule 56. *See, e.g.*, *Blunt-Bey*, 612 F. Supp. 2d at 74; *cf. El Badrawi*, 583 F. Supp. 2d at 299 (not questioning the sufficiency of a declaration filed by the agency's FOIA branch chief who learned of relevant information in her official capacity).

Nor did Mr. Crane fail to adequately describe the agency's file system on the basis that he did not describe *all* of the agency's components. Rather, the Court finds that Mr. Crane provides an adequate explanation for why only certain file systems were searched. *See* Crane Decl. [doc. # 35-4] ¶ 6 (noting that, based on their experience, the search coordinators determined that while no component would likely have responsive records because "[n]o DoD IG component conducts audits, evaluations, reviews, or investigations of military-related sexual trauma, sexual harassment, equal opportunity, or domestic violence complaints or of sexual-assault-related courts-martial . . . or maintains records containing the types of statistical information on these topics," three thoroughly-described components were determined to be the most likely candidates for turning up responsive records).

## C.

Plaintiffs contest the sufficiency of information in two of the Department of the Air Force's declarations (submitted by John M. Espinal, the FOIA Manager, Headquarters Air Force, Information Management Operations Branch, and Stephen V. Miliano, the Director of Equal Opportunity Operations, Air Force Personnel Center) on the basis that they do not adequately describe the relevant searches. The Court agrees, and concludes that summary judgment with regard to this agency is therefore unwarranted.

First, Plaintiffs contend that the Air Force did not sufficiently describe its FOIA file system. *See El Badrawi*, 583 F. Supp. 2d at 300. Mr. Espinal's declaration explains generally that

when Headquarters Air Force, Information Management Operations Branch (HAF/IMOB) receives a FOIA request, it creates a record describing the requested records. *See* Espinal Decl. [doc. # 35-5] ¶ 3 (noting that, "[a]mong the items of information that are entered in the database, we record the name and address of the requester, the date of the request, and a description of the records requested."). Plaintiffs contend that without a more thorough description of what information is recorded about FOIA requests, it is impossible to determine if the Air Force conducted an appropriate search in response to Item 3 (which requested the number of requests by service members for the release of records relating to MST, EO, SH, and DV complaints). The Court agrees. The Air Force should submit a supplemental declaration describing whether it is possible to search the FOIA database for the information requested in Item 3.

Second, Plaintiffs note that the Air Force did not produce race or gender data for EO and SH complaints because it was "not readily available" and because it maintained that reviewing and tabulating quarterly and annual summaries would be "overly burdensome." Miliano Decl. [doc. # 35-8] ¶ 6. Plaintiffs note that the Air Force is required to conduct a reasonable search, that there is no exclusion for items "not readily available," and that Mr. Miliano's failure to describe the summaries makes it impossible to determine whether producing them or a review of them would be overly burdensome. Defendants maintain that responding to this request would require reviewing individual cases one-by-one and creating a new record, which it is not required to do.

While the Court agrees that the Air Force is under no obligation to create a new record, *see Scraff-Martinez*, 770 F. Supp. 2d at 22-23, it is not clear from Mr. Miliano's declaration why the quarterly or annual summaries themselves would not be responsive to Item 12 or why producing them would be unduly burdensome. Accordingly, the Air Force should either disclose

those summaries or submit a supplemental affidavit explaining why the summaries are non-responsive.

D.

Plaintiffs take issue with four declarations, submitted on behalf of the Department of the Army, provided by (1) Malcom H. Squires, the Clerk of Court for the United States Army Court of Criminal Appeals; (2) Michelle Kardellis, the Chief of the FOIA and Privacy Division, U.S. Army Criminal Investigation Command Crime Record Center; (3) Terrance J. Sanders, the Equal Opportunity Branch Chief, HQDA for the Deputy Chief of Staff, Army G-1; and (4) Nathan F. Evans, a Program and Policy Analyst, Sexual Harassment/Assault Response and Prevention Division, Human Resources Policy Directorate, Army G-1.

The Court finds that Ms. Kardellis and Mr. Sanders fail to adequately describe searches conducted by their respective agencies and that the declarations submitted by Mr. Squires, Ms. Kardelis, and Mr. Sanders all fail to carry the agency's burden of proof. Summary judgment is therefore inappropriate with regard to their respective agencies at this time. However, the Court finds Mr. Evans's declaration sufficient.

1.

Plaintiffs argue that many of the Army searches were inadequately described. While some of Plaintiffs' initial claims raised important points, many of their concerns have been addressed by Defendants' supplemental filings.[10]

---

[10] Other claims simply fail. For example, Plaintiffs contend that Ms. Kardellis never adequately explains why no search was conducted with regard to Item 11. The Court disagrees: Ms. Kardelis, like Mr. Harrison, apparently all understood all DoD requests to request aggregate data. Therefore, her decision not to search databases that collected only individualized data was reasonable at the time. However, as there is a question of fact as to whether Item 11's request for

First, Plaintiffs originally argued that Mr. Squires failed to adequately describe the Army Court-Martial Information System (ACMIS), because he did not describe whether the database searches may be broken down by gender or race, and by extension did not explain why such a breakdown was not produced. However, as noted in his second declaration, Mr. Squires subsequently had a subordinate conduct an ACMIS search using the following parameters: the years 2005-2010; sex offense cases involving adult victims; race and gender of the accused; and the gender of victims (because ACMIS does not track victim's race). This information was compiled in a spreadsheet and submitted to Plaintiffs. *See* Second Squires Decl. [doc. # 50-2] ¶¶ 5-6.

Second, Plaintiffs argued that the Army failed to describe how it maintains records of FOIA requests, making it impossible to evaluate the reasonableness of a search for information on the number of requests by service members for records pertaining to military sexual trauma, equal opportunity, and sexual harassment. *See* Pls.' Resp. [doc. # 47] at 20 ("[I]n contrast to the Air Force, the Army declarations say nothing about the Army's FOIA record-keeping practices. They fail to state whether a database to track these records even exists.").

Defendants counter that because no DoD component tracks whether a FOIA requester is a service member, they cannot provide additional information about the filing systems. *See* Second Kammer Decl. [doc. # 501-1] ¶ 3 (stating the DoD systems that track FOIA requests track only information required by FOIA, and that FOIA does not require agencies to track and maintain data on requests received by service members).

While the Court finds that the Army's original failure to describe their record-keeping practices would have constituted an inadequate description of its search, Mr. Kammer's

---

individualized data is unduly burdensome, the Record Center may need to conduct an additional search and provide an additional declaration at a later date.

supplemental declaration provides a sufficient reason for why this failure is harmless: as the Army did not have the requested information, it could not provide it. Mr. Kammer's supplemental declaration also excuses the EO Office's failure to conduct a search for information on the number of requests by service members for information on MST, EO, SH, and DV complaints (Item 4). *See id.* ¶ 4 (stating that the data responsive to Item 4 is not tracked or maintained).

Some of Plaintiffs' other critiques, however, are not adequately addressed by supplemental filings. First, Plaintiffs claim that Ms. Kardelis's declaration fails to provide information on whether the ACRC database contains information on gender and race. All that is known is that the file system is indexed by "pertinent data to enable the positive identification of individuals" and that it "cannot be searched by generic type of complaint or crime." Kardelis Decl. [doc. # 35-11] ¶ 7. In explaining why a search for Item 12 was outside of the agency's normal business-as-usual responses, the agency simply stated that "[a]bsent specific offense codes, no search could be conducted for the items requested." *Id.* ¶ 8(f). The Court finds that this declaration does not provide a sufficient description of the ACRC database to allow the Court to evaluate whether a reasonable search was conducted.

Similarly, the EO Office failed to describe why it did not search its database for gender/race breakdowns of information pertaining to sexual harassment, despite acknowledging that its database had relevant information. *See* Sanders Decl. [doc. # 35-13] ¶ 7 ("After careful review, it was determined data maintained by this office[] could answer EO and SH complaint data provided by the EORS. However, responses and final determinations of SH data is reported by the SHARP office."). Plaintiffs correctly note that the reference to the SHARP office's disposition of *responses and final determinations* does not explain why the EO office did not

conduct a search for SH *complaints*, especially as the EO office did conduct a search of EO complaints and provided the relevant numbers, along with their racial and gender breakdown, to Plaintiffs. *See id.* ¶ 8.

2.

Arguing that the Department of the Army failed to liberally or reasonably construe Plaintiffs' requests by reading them as not requiring a search of the Army Criminal Investigation Command Crime Record Center (ACRC), Plaintiffs contest whether the Department of the Army has met its burden of proof in proving it conducted an adequate search. *See Nation Magazine*, 71 F.3d at 890.

According to Ms. Kardelis's declaration, ACRC was not searched because "law enforcement records are not categorized or referenced by the generic description used in the subject FOIA request, such as 'equal opportunity,' 'military sexual trauma' or 'domestic violence' complaints or incidents." Kardelis Decl. [doc. # 35-11] ¶ 8(c). Instead, law enforcement records may only be searched for specific offense codes that relate to certain crimes. Ms. Kardelis maintains that a search for the information in Items 3-5 would entail the "creation of a record at significant time and expense." *Id.* Plaintiffs contend that a reasonable reading of their requests would have been to construe them as requesting information about crimes like "rape" (Offense Code 6E1) or "forced non-consensual sodomy" (Offense Code 6F8).

The Court agrees. "Sexual assault" is easily read as encompassing rape and other non-consensual sexual crimes defined in the Army's offense codes. The fact that the agency was unwilling to read the Plaintiffs' request liberally to include such terms seems to be almost willful blindness.

Nor does the Court find Defendants' claim that ACRC would have had to create new records to respond to Item 5 a sufficient counterargument. The Court believes that Defendants' understanding of what it means to create a new record may be unreasonably limited. DoD regulations implementing FOIA acknowledge that, in the case of electronic data, "the issue of whether records are actually created or merely extracted from an existing database is not always readily apparent." 32 C.F.R. § 286.4(g)(2). Agencies should "apply a standard of reasonableness. In other words, if the capability exists to respond to the request, and the effort would be a business as usual approach, then the request should be processed." *Id.* However, "the request need not be processed where the capability to respond does not exist without a significant expenditure of resources . . . in both time and manpower, that would cause a significant interference with the operation of the [agency's] automated information system." *Id.*

Equally problematically, Mr. Squires stated that his staff "has the capability to create reports using information contained in an electronic database," but did not do so because "the creation of reports from an electronic database [is not] our normal 'business as usual' approach to FOIA requests." Squires Decl. [doc. # 35-14] ¶ 14. However, under 32 C.F.R. § 286.4(g)(2), the question is not whether the creation of a record from an electronic database is business as usual, but rather whether the creation of the record would require "a significant expenditure of resources . . . that would cause a significant interference" with the agency's information system. *Id.* Because Mr. Squires does not elaborate on whether the creation of a record from a search of the database would result in a significant interference, the Court finds that his declaration is not sufficient to support the agency's burden of demonstrating that it conducted a reasonable search.

For all of the above reasons, summary judgment is not warranted.

3.

Plaintiffs' argument that it has countervailing evidence with regard to Mr. Evans's declaration fails. Mr. Evans states that the Sexual Assault Data Management System (SADMS) contains "demographic information about the victim(s) [of sexual assault] and alleged offenders [and] procedural information regarding the status of the report to include the law enforcement investigation, and disposition data," Evans Decl. [doc. # 35-12] ¶ 10, but that the Army decided not to search it on the basis that "*all* information contained in the SADMS that is likely to be responsive to the FOIA request is contained in the [Sexual Harassment/Assault Response and Prevention ("SHARP")] annual reports sent to DoD," *id.* ¶ 11 (emphasis added). Plaintiffs argue that because the SAPRO reports do not include gender or race breakdowns, if the SADMS demographic information does include such information, Mr. Evans's reasoning fails. Plaintiffs' claim is purely speculative; Mr. Evans affirmed that the two databases contain the same information, and in the absence of evidence of bad faith, the Court presumes Mr. Evans's statement was accurate. *Carney*, 19 F.3d at 812 (noting that agency declarations enjoy a presumption of good faith).

E.

The declaration of the Commandant of the Marine Corps, submitted by Theresa Ross, the Head of the FOIA/Privacy Act Section at the U.S. Marine Corps Headquarters, is sufficient and summary judgment is warranted. Ms. Ross supervised Genevieve Best, the individual tasked with coordinating the relevant FOIA search.

Plaintiffs argue that Ms. Ross did not adequately describe the Marine Corps's filing system or search because she describes only where Plaintiffs' FOIA request was sent—not where it could have been sent within the Marine Corps's file system. However, Ms. Ross describes Ms.

Best's process for determining which file systems would be relevant in great detail, *see* Ross Decl. [doc. # 35-20] ¶¶ 6-23, and summarizes that "[b]ased on research inquiry responses and personal expertise and knowledge of the records kept by HQMC components, Ms. Best concluded that [four components] would be the only USMC components that would maintain documents or data responsive to the Plaintiff's FOIA request," *id.* ¶ 24; *see also id.* ¶ 25 (noting Ms. Best's reasoning for determining that an additional component might also have relevant records); *id.* ¶ 26 (noting that Ms. Best also determined that Code 20 would have relevant information, but not requesting anything from them as they already had Plaintiffs' FOIA request). The Court finds the description of how Ms. Best reached her conclusions as to where to send requests for records sufficient.

Plaintiffs next argue that, because they can offer countervailing evidence, there is a question of material fact as to whether the Marine Corps conducted a search reasonably calculated to produce all relevant records.[11] They note that Ms. Ross admitted that the Marine Corps Headquarters has the ability to search FOIA logs in response to Item 3, but did not do so because the logs are not "centrally maintained" and may "not have captured sufficient information to specifically identify and retrieve those FOIA request case files where the FOIA requester was seeking records relating to MST or DV." *Id.* Ex. S (Response to Item 3). Plaintiffs argue that neither of these excuses constitutes a reason the Marines may avoid its FOIA obligation. Defendants' general response is that no DoD component tracks this information,

---

[11] Plaintiffs originally argued that Ms. Ross's declaration states that the decision not to search the Law Enforcement Corrections Plan (PSL) of the Plans, Policy & Operations Department stemmed from a determination that "while PSL has the ability to capture Corrections data, it appears that a majority, if not all of, the requested items would not necessarily fall into" PSL's data. Ross Decl. [doc. # 35-20] ¶ 20. Plaintiffs argue that this is actually a reason to search, as only by searching could the agency ascertain how many responsive records would actually be found. Defendants have subsequently conducted a search of the PSL. *See* Franks Decl. [doc. # 50-5] ¶¶ 4-5. The Court finds this subsequent search sufficient to satisfy Plaintiffs' concerns.

although Mr. Kammer's declaration is less clear on this point than it might be. *See* Second Kammer Decl. [doc. # 50-1] ¶ 3 (stating the DoD systems that track FOIA requests track only information required by FOIA, and that FOIA does not require agencies to track and maintain data on requests received by service members).

As before, while the Court finds that the Marine Corps's original reasoning would not have excused its failure to conduct a search, Mr. Kammer's supplemental declaration provides a sufficient reason for why this failure is harmless: as the Marine Corps did not have the requested information, it could not provide it.

Furthermore, Plaintiffs note that Ms. Ross claimed that some race and gender breakdowns are not available because finding such data would involve manual searches. Citing 5 U.S.C. § 552(a)(3)(D) ("[T]he term 'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request."), Plaintiffs argue that this is not a sufficient justification for not conducting a search for responsive documents. Defendants reply that responding to this request would require going through individual cases and creating a new record, which it is not required to do. *See Scraff-Martinez*, 770 F. Supp. 2d at 22-23. The Court agrees with Defendants.

F.

The Office of Freedom of Information's declaration, submitted by William T. Kammer, Chief of the Office of Freedom of Information Division,[12] is not sufficient and summary judgment with regard to this agency is not warranted.

Mr. Kammer is responsible for implementation of the DoD FOIA Program and the issuance of agency-wide policy guidance and instructions on FOIA matters. He also supervises

---

[12] Plaintiffs contend that Mr. Kammer was not Chief during the relevant time period, but his declaration states that he has been Chief since August 2005.

the processing of initial FOIA requests for documents within the Office of the Secretary of Defense and the Office of the Chairman of the Joint Chiefs of Staff. His declaration states that his office "tasked" two components to search for relevant records, but it is not clear who requested, conducted, or even supervised the individuals conducting those searches.

Furthermore, Mr. Kammer's declaration contains conclusory statements and overly broad descriptions of the searches conducted, which indicates that he may not have sufficient personal knowledge to adequately describe the searches. *See, e.g.*, *Blunt-Bey*, 612 F. Supp. 2d at 74; *see also Grand Cent. P'ship*, 166 F.3d at 478 (requiring an agency affidavit to provide reasonably specific details in its description of a search).

Either Mr. Kammer or other individuals should submit supplemental declarations regarding the Office of Freedom of Information's searches. *See N.Y. Times*, 499 F. Supp. 2d at 518. The Court strongly recommends that the agency's representative take Plaintiffs' critiques into account when drafting the supplemental declaration. Although an all-encompassing overview of the agency's system is not necessary, the Court is particularly troubled by the lack of description of the searches that resulted in the release of numerous records from the Defense Freedom of Information and Policy Office, as it is unclear whether these releases are the results of search undertaken by various individual departments or the result of a search conducted by the Policy Office.

## G.

The VBA's declaration, submitted by Frances Victoria Hudzik, the FOIA Officer and Alternate Privacy Officer at the VBA, is not sufficient and summary judgment with regard to this agency is not warranted.

Ms. Hudzik's personal duties and responsibilities are to review FOIA requests to determine if they reasonably describe the records sought, in order to be able to locate the records, and to determine if they are in accordance with implementing regulations. She personally reviewed Plaintiffs' request and determined it was proper. Searches, however, were assigned to others; Ms. Hudzik does not state that she either conducted the searches, supervised those who did conduct the searches, or had any involvement after her initial processing of the request.

As Ms. Hudzik's declaration is insufficient, the VBA should submit a supplemental declaration, either from an individual who did supervise the search or from Ms. Hudzik clarifying her supervisory role with regard to the search. *See N.Y. Times*, 499 F. Supp. 2d at 518.

While the Court need not address Plaintiffs' arguments that the initial declaration fails to adequately describe the agency's file system or search, the Court strongly recommends that the agency's representative takes Plaintiffs' critiques into account when drafting a supplemental declaration. That being said, the Court also notes that Defendants' explanation for why the Office of Field Operations ("OFO") was consulted but not searched—namely, because it didn't maintain relevant data—seems reasonable. *See* Hudzik Decl. [doc. # 35-21] ¶ 59 (stating that the OFO "is responsible for directing the operations of field offices under the jurisdiction of the [VBA]. All corporate data used by the field in day-to-day operations is not managed by OFO.").

## H.

The BVA's declaration, submitted by Richard C. Thrasher, the Chief Counsel for Policy & Procedure for the BVA, is sufficient and summary judgment with regard to this agency is warranted.

Mr. Thrasher supervises Margaret L. Peak, who in turn is responsible for overseeing FOIA requests within BVA. It does not appear from his declaration that Mr. Thrasher ever

personally took any action in this matter, either as a searcher or supervisor; instead, everything related to BVA's search appears to have been coordinated or overseen by Ms. Peak. While Ms. Peak would likely be the more appropriate declarant in this matter, the Court does not find that Mr. Thrasher's declaration is therefore insufficient. *See Adamowicz*, 672 F. Supp. 2d at 463.

Plaintiffs argue that summary judgment is inappropriate on the basis that, although the Veterans Appeals Control and Locator System (VACOLS)—the BVA's tracking database and the source of responsive documents the BVA has provided—tracks gender, BVA's production did not include gender information as to each request. One of the disclosed documents did not include gender information, and no reason was given for this omission. Defendants respond that the BVA did not need to provide gender information because it did not need to provide the list of PTSD decisions—which are published online—at all. The BVA maintains that it provided this information solely to facilitate Plaintiffs' online searches. *See* Defs.' Reply [doc. # 50] at 19. As an agency need not disclose materials it has previously released, *see Tax Analysts*, 492 U.S. at 152, the Court finds that Plaintiffs' proffered countervailing evidence is not sufficient to raise a genuine issue of material fact as to the reasonableness of BVA's search.

Plaintiffs then argue that a document tracking PTSD appeals does not include a field for "issues." The analogous document for non-PTSD appeals with sexual harassment contention did contain an "issues" field with information relating to service members, a category of interest to Plaintiffs, suggesting that the data is captured by VACOLS but was not produced. Defendants respond that the BVA does not track the factual bases of its decisions in a manner responsive to Requests 6-8. The "issues" column refers simply to issues in an appeal and does not explain whether the rejection of an appeal was based on the lack of direct services (Request 6) nor does it list what the evidentiary basis for the direct service connection consisted of (Requests 7-8).

Defendants conclude that the BVA therefore had no obligation to provide an "issues" column that would be non-responsive. The Court finds BVA's explanation reasonable, and again concludes that Plaintiffs have not established a genuine issue of material fact sufficient to defeat summary judgment.

## VI.

Defendants' Motion for Summary Judgment [doc. # 35] is GRANTED IN PART and DENIED IN PART. The Court finds that Defendants appropriately did not respond to the first two requests made of all DoD agencies and that there is a question of fact as to whether Plaintiffs' eleventh request of DoD agencies was unduly burdensome. The Court further finds that the Patterson, Tidewelll, Espinal, Miliano, Squires, Kardellis, Sanders, Kammer, and Hudzik declarations are insufficient and that the Harrison, Crane, Evans, Ross, and Thrasher declarations are sufficient. Where useful to demonstrate that an adequate search was conducted, Defendants should submit supplemental affidavits. *See N.Y. Times*, 499 F. Supp. 2d at 518. Supplemental affidavits are due May 15, 2012. The parties shall also submit a joint status report within 30 days of the entry of this decision describing their preferences for how this case should proceed.

IT IS SO ORDERED.


/s/     Mark R. Kravitz
        United States District Judge


Dated at New Haven, Connecticut: March 30, 2012.